# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 19-1916V
UNPUBLISHED

| | |
|---|---|
| ROBERT MCCABE, | Chief Special Master Corcoran |
| Petitioner, | Filed: December 29, 2021 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*David John Carney, Green & Schafle, LLC, Philadelphia, PA, for Petitioner.*

*Martin Conway Galvin, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On December 18, 2019, Robert McCabe filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to him on September 24, 2017. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

damages in the amount **$110,000.00**, **representing Petitioner's actual pain and suffering.**

### I.      Relevant Procedural History

As noted above, the case was initiated in December 2019. On April 28, 2020, Respondent filed a status report suggesting that this matter might not be capable of an informal resolution within the SPU because the vaccine records established that the vaccine at issue had been administered in Petitioner's *left* deltoid – not his right shoulder as alleged. ECF No. 15 at 2. Additionally, Respondent's counsel asserted that Petitioner did not seek treatment for right shoulder pain until approximately one month after his vaccination. *Id.*

On March 24, 2021, Petitioner filed a Motion for Ruling on Record and Brief in support of Damages ("Motion"), arguing that he had established entitlement to compensation for his SIRVA injury and requesting $195,000.00 for past/actual pain and suffering plus $1,000.00 per year for life for future pain and suffering. ECF No. 26. Petitioner specifically asserted that evidence in the record preponderantly established that the vaccine was administered in his right shoulder and caused injury within 48 hours. *Id.*

Respondent filed his Response to Petitioner's Motion and Rule 4(c) Report on May 20, 2021 ("Response") recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 28. Affirming his counsel's observation that the records established that the vaccine was administered in Petitioner's left deltoid, Respondent argued that the Table criterion that pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered had not been met. *Id.* at 7. Respondent further asserted that Petitioner had not provided evidence sufficient to establish causation-in-fact under the relevant standard. *Id.* at 8-10. Petitioner filed his Reply on May 28, 2021. ECF No. 29.

In November of this year, I proposed this case be set for an expedited "Motions Day" hearing on December 10, 2021, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. ECF No. 30. The parties agreed, and Respondent filed his damages brief ("Brief") on December 6, 2021, recommending an award of $90,000 for actual pain and suffering if I found that Petitioner was entitled to compensation. ECF Nos. 31, 34.

The Motions Day hearing took place as scheduled. Minute Entry dated December 27, 2021. After the argument, I orally ruled on Petitioner's entitlement to compensation

and made a damages determination as well. This Decision memorializes those findings/determinations.

## II.   Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B.  Site of Vaccination

Based upon a review of the entire record, I find that the flu vaccine Petitioner received on September 24, 2017, was likely administered in his right arm, as he contends. Specifically, I base my findings on the following evidence:

- Petitioner received the flu vaccine alleged as causal on September 24, 2017, at a Rite-Aid pharmacy. He was accompanied by his wife, Virginia

McCabe, who also received a flu vaccine at that time. Ex. 1 at 2-5; Ex. 2 at 7; Ex. 13 at 2-3; Ex. 18.

- The vaccination confirmation record is comprised of a "Screening Questionnaire and Consent Form ("Consent Form")" and a document entitled "Service Details." While the Consent Form is difficult to read, it appears that "LA" was manually circled to indicate the site of vaccine administration. Ex. 1 at 3. The Service Details form, which appears to be a computerized record, reflects that Petitioner's flu shot was administered in his left upper arm. *Id.* at 5.

- In his supplemental affidavit, Petitioner avers that he instructed the pharmacist to inject the vaccine into his right arm "as it is my dominant arm and always tolerates the injection better." Ex. 2 at 3. He further recalled "the pharmacist placing a Band-Aid on my right shoulder where the flu shot was given, which further reaffirms in my mind that the vaccine was not given in my left shoulder." *Id.* at 7.

- Petitioner presented to an orthopedist on October 4 and October 25, 2017, for care and evaluation of bilateral heel pain. There is no indication that Petitioner mentioned his September 2017 vaccination or side-effects therefrom. Ex. 5 at 29-33.

- At an initial treatment visit with his primary care physician on October 30, 2017, Petitioner complained of right shoulder pain and was thereafter directed to undergo an MRI of his right shoulder. Ex. 3 at 9.

- Petitioner had a follow-up visit with his primary care physician on November 3, 2017. During this visit, Petitioner reported that he continued to have right shoulder pain. Ex. 3 at 8.

- On November 22, 2017, Petitioner underwent a right shoulder MRI without contrast. The MRI revealed "1. Subdeltoid/subacromial and subcoracoid bursitis. 2. Supraspinatus footprint focal high-grade partial bursal tear with subjacent reactive marrow edema. 3. Biceps tenosynovitis. 4. No significant glenohumeral OA or labral tear." Ex. 4 at 7.

- Petitioner presented to his primary care physician on November 28, 2017 to discuss the results of the MRI. Petitioner again reported that he continued to experience right shoulder pain. Ex. 3 at 7.

- On December 4, 2017, Petitioner had an appointment with an orthopedist. The orthopedist noted that Petitioner presented with ten weeks of right shoulder pain and that "he did have a flu shot immediately preceding his pain." Ex. 5 at 24.

- Petitioner had an initial physical therapy (PT) evaluation on December 14, 2017. At this visit, Petitioner reported experiencing right shoulder pain a few days after his flu shot. Ex. 6 at 8.

- Petitioner underwent a surgical arthroscopy of the right shoulder, arthroscopic rotator cuff repair, debridement and subacromial decompression on February 6, 2019. Ex. 5 at 41-42.

- Petitioner's wife, Virginia McCabe, submitted an affidavit dated April 30, 2020. In it, she avers that she received the flu shot in her right shoulder – not her left as reflected in her own record of vaccine administration. Noting that her medical history is significant for left side breast cancer, Ms. McCabe states "I was advised by my physicians, surgeons, oncologists, vascular surgeons and anesthesiologists that I cannot receive any vaccines, blood pressure measurements and I.V. medications in my left arm due to the amount of treatment, surgery and repair that I have had on the left side of my upper body." Ex. 13 at 2.

- Ms. McCabe's vaccination record, which reflects her September 24, 2017 vaccination, as well as medical records documenting her breast cancer diagnosis and related procedures, were filed as Exhibits 14 – 18.

The above-referenced evidence supports a finding that Mr. McCabe's September 24, 2017 vaccine was likely administered in his right shoulder. Petitioner consistently sought treatment for his right shoulder, and on at least two occasions specifically associated his right shoulder pain with the vaccination. As discussed in other decisions, consistent reporting to treating physicians that a shoulder injury was associated with a specific vaccination in the same shoulder can serve as probative evidence that can overcome a contradictory vaccine administration form. *See e.g.*, *Desai v. Sec'y of Health & Human Servs.*, No. 14-811V, 2020 WL 4919777, at *13-14 (Fed. Cl. Spec. Mstr. July 30, 2020); *Mogavero v. Sec'y of Health & Human Servs.*, No. 18-1197V, 2020 WL 4198762 (Fed. Cl. Spec. Mstr. May 12, 2020); *Hanna v. Sec'y of Health & Human Servs.*, No. 18-1455V, 2021 WL 3486248 (Fed. Cl. Spec. Mstr. July 15, 2021); *Mezzacapo v. Sec'y of Health & Human Servs.*, No. 18-1977V, 2021 WL 1940435, at *7 (Fed. Cl. Spec. Mstr. Apr. 19, 2021).

Notably, Mr. McCabe was accompanied to the September 2017 vaccination by his wife, who also received her flu vaccine at the same time and who has corroborated Petitioner's assertion that he received the flu vaccine in his right arm. Additionally, Mrs. McCabe offered written testimony concerning her own erroneous vaccination record. Like Petitioner, she states that the flu shot was administered in her right arm – not her left, as indicated in her own record – elaborating that "I cannot receive any vaccines . . . in my left arm due to the amount of treatment, surgery and repair that I have had on the left side of my body." Ex. 13 at 2. This explanation is consistent with the medical records

documenting the treatment Ms. McCabe received for left side breast cancer. I accept Petitioner's affidavits, and that of his wife, to be credible accounts of the facts surrounding vaccination, having no reason to doubt the truthfulness of the assertions contained therein.

Although there were two intervening appointments between the date of Petitioner's vaccination and his first doctor's visit when right shoulder pain was discussed, these records do not contradict the situs conclusion. Thus, the only evidence undermining Petitioner's contention is the vaccination confirmation record – the VAR. However, while the "Service Details" portion of the VAR clearly indicates a left arm vaccination, the notation regarding site of administration on the Consent Form is difficult to discern. Respondent argues that, despite its lack of clarity, the VAR's contemporaneous quality is grounds to give it substantially more weight than other subsequent evidence. Response at 7, 10. But, as discussed above, the subsequent treatment records in this case universally describe a right shoulder injury associated with the vaccination in that same shoulder.

This case represents a close call.[4] Petitioners cannot successfully controvert vaccination records establishing situs simply by arguing that the record is wrong, but without offering other evidence. Likewise, however, Respondent cannot solely point to the vaccination record – especially when, as here, it is unclear or has been contradicted by treatment records and testimony. In this case, the medical records, combined with the witness testimony, provide good reason for discounting the reliability of the notations regarding situs on the VAR. I therefore find it more likely than not that the vaccination alleged as causal in this case was administered to Petitioner in the right arm/shoulder on September 24, 2017.

### C. Factual Findings Regarding QAI Criteria for Table SIRVA

After a review of the entire record, I find that Petitioner has preponderantly satisfied the QAI requirements for a Table SIRVA. The medical records and affidavits filed in this case are hereby incorporated by reference.

### 1. Prior Condition

---

[4] I also note that Petitioner's claim that he preferred to receive a vaccination in his dominant arm is not particularly persuasive, given that the vast majority of claimants seek vaccination in the *non-dominant* arm, so as to avoid discomfort in the arm they use the most. There was, however, enough other evidence to support Petitioner's claim without the need to give weight to this highly-uncommon assertion.

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent does not dispute Petitioner has met the first requirement under the QAI for a Table SIRVA. Additionally, I do not find any evidence that Petitioner suffered a pre-vaccination history of problems that would explain his post-vaccination shoulder symptoms. Accordingly, I find that Petitioner has met this first criterion to establish a Table SIRVA.

### 2. Onset of Pain

A petitioner alleging a SIRVA claim must also show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

Respondent does not dispute Petitioner has met this requirement. Additionally, while Petitioner's records do not reflect a precise date of onset, I find that the evidence collectively establishes that his shoulder pain began within 48 hours of receiving the September 24, 2017 flu vaccine. There is no counterevidence undercutting Petitioner's contention that his pain began close-in-time to vaccination, and he consistently attributed his shoulder pain to the flu shot. *See, e.g.*, Ex. 3 at 7-9 (primary care records detailing Petitioner's reports of right shoulder pain); Ex. 5 at 24 (orthopedic record noting that Petitioner "did have a flu shot immediately preceding his [right shoulder] pain); Ex. 6 at 8 (physical therapy note reflecting Petitioner's report of right shoulder pain "a few days" after his flu shot). Furthermore, the affidavits submitted by Petitioner are consistent with the medical evidence, and I have no reason not to deem them credible otherwise. Accordingly, I find that Petitioner has met this criterion to establish a Table SIRVA.

### 3. Scope of Pain and Limited ROM

Based upon a review of the entire record, I find that Petitioner's pain and reduced range of motion were limited to his right shoulder. In his Response, Respondent asserts that Petitioner's pain and reduced range of motion were not "limited to the shoulder in which the intramuscular vaccine was administered" given that Petitioner's vaccination record lists his left arm as the site of administration. Response at 7. This argument, however, was predicated on acceptance of Respondent's contention that Petitioner received the vaccine in his left shoulder. Based on my finding herein, that argument is moot.

Although not raised in the Response, during the Motions Day hearing, Respondent also argued that Petitioner's pain was not limited to the shoulder in which his flu shot was given because of Petitioner's complaint of pain that radiated down his elbow at his December 4, 2017 orthopedic appointment. *See* Ex. 5 at 24. Although there is a singular reference to radiating pain in the filed record, the majority of other records support a finding that Petitioner's pain was limited to his right shoulder. Accordingly, preponderant evidence establishes that Petitioner's pain was limited to his right shoulder.

### 4.  Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent has not contested that Petitioner meets this criterion, and there is no evidence in the record to the contrary. Thus, the record contains preponderant evidence establishing that there is no other condition or abnormality which would explain the symptoms of Petitioner's right shoulder injury.

### D.  Other Requirements for Entitlement

As stated in the previous section, I find that the onset of Petitioner's left shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this QAI requirement). This finding also satisfies the requirement that the first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(II)(C) (listing a time frame of 48 hours for a Table SIRVA following receipt of the flu vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation.

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), i.e. receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed.

Based upon all of the above, Petitioner has established that he suffered a Table SIRVA. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### III.  Damages

### A.  The Parties' Arguments

Citing six prior damages determinations, Petitioner requests $195,000.00 in actual pain and suffering plus $1,000.00 per year for life for future pain and suffering. Motion at 2. He asserts that his course of treatment (including two MRIs, two steroid injections, approximately 80 sessions of physical therapy, and arthroscopic surgery), is comparable to the aforementioned SIRVA cases and warrants an award at that level. Motion at 19, 20-27. Petitioner also emphasizes that he endured severe pain and suffering, and that his symptoms continue to interfere with his ability to care for his ill wife and perform activities of daily living. *Id.* at 27.

Respondent, by contrast, proposes an award of no more than $90,000.00 for Petitioner's pain and suffering. Brief at 2, 11. He argues that "the severity and duration of petitioner's pain, as well as its limited duration and nominal impact on petitioner's activities of daily living, can fairly be described as moderate and mild." *Id.* at 11. Respondent cites to three cases in particular – *Martin*, *Shelton*, and *Weed* – in which petitioners received between $97,500.00 and $105,000.00 for pain and suffering.[5]

## B.  Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Berge v. Sec'y Health & Human Servs.*, No. 19-1474V, 2021 WL 4144999, at *1-3. (Fed. Cl. Spec. Mstr. Aug. 17, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. [6]

---

[5] *Martin v. Sec'y of Health & Human Servs.*, No. 19-0830V, 2021 WL 2350004 (Fed. Cl. Spec. Mstr. May 5, 2021)($100,000.00 for pain and suffering); *Shelton v. Sec'y of Health & Human Servs.,* No. 19-0279, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021) ($97,500 for pain and suffering); *Weed v. Sec'y of Health & Human Servs.,* No. 18-1473, 2021 WL 1711800 (Fed. Cl. Spec. Mstr. Mar. 30, 2021)($105,000 for pain and suffering).

[6] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

### C.  Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. When performing this analysis, I review the same record relied upon to determine entitlement, including the filed affidavits and medical records, written briefs, and argument at the December 10th Motions Day hearing. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and rely upon my experience adjudicating these cases. Based upon the above, I note and find the following:

- Petitioner received the flu vaccine alleged as causal on September 24, 2017. Ex. 1 at 2-5.

- Petitioner presented to D.P.M. Faith Schick at Rothman Orthopaedics on October 4, 2017 (10 days post-vaccination) where he complained of bilateral heel pain. Ex. 5 at 31-33. There is no mention of arm or shoulder pain in the record documenting this visit.

- On October 25, 2017, Petitioner again presented to D.P.M. Schick. He reported "feeling better with less pain to the heels with ambulation." Ex. 5 at 29-30. The record documenting this appointment does not indicate that Petitioner mentioned arm or shoulder pain.

- Petitioner presented to his primary care physician, Dr. Marc Nanfara, on October 30, 2017 (36 days post-vaccination) for a wellness exam. Upon examination, Dr. Nanfara's noted "lat[eral] abduction [illegible] full ant[erior] abduction, limited posterior abduction, neuro[logically] intact. Ex. 3 at 9.

- Petitioner underwent an x-ray on October 31, 2017. The impression was mild degenerative changes with "[n]o evidence of calcific tendinitis or fracture/dislocation." Ex. 4 at 6.

- Petitioner had a follow-up visit with Dr. Nanfara on November 3, 2017. Petitioner reported that his pain had continued, though to a lesser extent. The examination note indicates that although Petitioner experienced minimal discomfort, he had a positive drop test. In addition to diagnosing Petitioner with right shoulder pain and prescribing Motrin, Dr. Nanfara referred Petitioner to an orthopedist and for MRI testing. Ex. 3 at 8.

- Petitioner underwent a right shoulder MRI on November 22, 2017. It revealed

11

"1. Subdeltoid/subacromial and subcoracoid bursitis. 2. Supraspinatus footprint focal high-grade partial bursal sided tear with subjacent reactive marrow edema. 3. Biceps tenosynovitis. 4. No significant glenohumeral OA [osteoarthritis] or labral tear." Ex. 4 at 7.

- Petitioner returned to Dr. Nanfara on November 28, 2017 to discuss the MRI results. Petitioner reported that his right shoulder continued to hurt. Ex. 3 at 7.

- On December 4, 2017, Petitioner presented to Dr. Matthew Pepe at Rothman Orthopaedics. Dr. Pepe noted that Petitioner presented with ten weeks of right shoulder pain. Dr. Pepe further noted that Petitioner suffered from joint stiffness, decreased range of motion and positive impingement signs. Petitioner was assessed with right shoulder pain and adhesive capsulitis and was administered a steroid injection. Ex. 5 at 24-25.

- Petitioner participated in an initial physical therapy evaluation on December 14, 2017. He rated his current right shoulder pain as a zero on a ten-point scale, while also reporting that his pain ranged from zero at its best to ten at its worse. Ex. 6 at 8-10.

- Petitioner presented to Dr. Pepe on March 9, 2018. He reported "some improvement in his right shoulder symptoms," but noted "he gets plateaued." On exam, Petitioner was found to have improved range of motion and good strength. He was administered a second cortisone injection and was assessed with right shoulder adhesive capsulitis and a partial rotator cuff tear. Ex. 5 at 22-23.

- On April 20, 2018 (approximately 7 months post-vaccination), returned to Dr. Pepe for a follow-up examination. The medical note documenting this visit indicates that Petitioner "has very mild pain although he is very functional" and that his symptoms were minimal. It was further indicated that Petitioner "did have injection in the joint, which gave him significant benefit as well as a subcramial injection at the last visit with minimal benefit." Petitioner was assessed with a "right shoulder high grade partial rotator cuff tear." Ex. 5 at 20.

- During the period of December 14, 2017 through April 23, 2018, Petitioner participated in 32 physical therapy sessions. Ex. 6. The discharge summary indicates that Petitioner's current pain was a zero on a ten-point pain scale, while also reporting that his pain ranged from zero as its best to four at its worse. Further, Petitioner was found to have full range of motion on abduction, flexion and internal rotation, while his external rotation was slightly reduced. Moreover, Petitioner was unable to sleep on his right side, experienced some

difficulty putting on his jacket and had pain after a few minutes when lifting and "increased pain at end ranges" when reaching. His prognosis was "good." Ex. 6 at 111-12.

- Petitioner underwent a second MRI on September 11, 2018. It revealed "[s]upraspinatus tendinosis with near full-thickness articular surface tear," [i]nfraspinatus tendinosis with concealed interstitial tear," and [s]ubacromial deltoid bursitis." Ex. 4 at 2-3.

- On September 14, 2018 (approximately 1-year post vaccination), Petitioner returned to Dr. Pepe with complaints of discomfort in his right shoulder. He reported that this sensation occurred when rolling on his shoulder at night and when "reaching, lifting, pushing or pulling." Noting that Petitioner's most recent MRI demonstrated a progressive rotator cuff tear that was "enlarging," Dr. Pepe recommended arthroscopic rotator cuff repair. Petitioner indicated that he would pursue this course of treatment after his retirement in January 2019. Ex. 5 at 18.

- Petitioner underwent right shoulder arthroscopic rotator cuff repair, debridement and decompression on February 6, 2019 – almost a year and a half post-vaccination. Ex. 5 at 41-42.

- Petitioner presented to P.A. Diego L. Fiorentino on May 20, 2019. The record indicates that Petitioner felt excellent, had no pain and that his "motion [was] returning nicely." Ex. 5 at 8.

- Petitioner began a second course of physical therapy on June 6, 2019. At the time of his initial evaluation, Petitioner reported that his current right shoulder pain was a two on a ten-point scale, and that his pain ranged from zero at its best to nine at it worse. Petitioner also reported that he suffered from weakness, limited range of motion, and restricted functional activities of daily living. Ex. 7 at 44-46.

- On July 15, 2019, Petitioner attended a follow-up appointment with P.A. Fiorentino regarding his right shoulder. The note documenting this visit indicates that Petitioner's condition was improving and he was feeling "quite well. Ex. 5 at 6.

- Petitioner underwent a physical therapy re-evaluation on September 30, 2019. Ex. 12 at 12-14. The note documenting this evaluation reveals that Petitioner's pain ranged from zero to five on a ten-point scale. *Id.* Petitioner's "problem list" included decreased range of motion and strength, which prevented full

functional activity, as well as decreased participation in recreational activities and decreased postural strength. *Id*. at 14.

- Petitioner's last documented orthopedic appointment took place on October 14, 2019 – approximately 2 years post-vaccination. The medical note indicates that Petitioner was "feeling excellent" and had been "improving nicely." Petitioner was instructed to continue with six more weeks of therapy before transitioning to a home exercise program and to "follow up . . . on an as-needed basis." Ex. 19 at 4.

- Between June 6 and October 24, 2019, Petitioner participated in 49 physical therapy sessions. Ex. 7; Ex. 12. The note documenting his last visit indicates that Petitioner's pain intensity was stable. Ex. 12 at 4.

- Petitioner avers that, as of March 5, 2021, he continues to have "severe pain, discomfort, and decreased range of motion" in his right shoulder. Ex. 20 at 1. He further notes that, as a result of this pain, he has had difficulty performing activities of daily living, caring for his wife (who is a cancer-survivor), and walking his two large dogs. *Id*. at 4. Additionally, Petitioner estimates a 20% loss of function in his right shoulder and states that "[a]ny time I try to push my shoulder beyond the 80% functionality, I have increased pain, discomfort, and soreness for days after." *Id*.

The case record thus establishes that Mr. McCabe experienced a moderate shoulder injury that was serious enough for arthroscopic surgery to be performed, and for an extensive course of treatment to be pursued. Mr. McCabe participated in two sessions of physical therapy (for approximately 80 visits), underwent two steroid injections, and two MRIs over the course of over two years.

Despite the consistent treatment history, however, Mr. McCabe clearly did not obtain treatment after his vaccination until more than a month later, and generally reported minor-to-moderate levels of pain before undergoing surgery. *See e.g.*, Ex. 3 at 8 (on November 3, 2017 noting "minimal discomfort"); Ex. 6 at 8 (on December 14, 2017 reporting his current pain as a zero on a ten-point scale, but a ten at its worse); Ex. 6 at 111 (on April 23, 2018 rating his current pain as a zero on a ten-point scale, but a four at its worse). Thus, the initial pain he experienced was not severe enough to prompt immediate concern – and it never progressed dramatically thereafter.

Moreover, Mr. McCabe's post-surgical records suggest that he recovered well and generally experienced only mild levels of pain with improved functional capacity. *See* Ex. 5 at 8; (indicating that Petitioner has no pain and that his "motion is returning nicely"); Ex.

7 at 44 (rating his current pain as a two on a ten-point scale, but a nine at its worse); Ex. 5 at 6 (finding that Petitioner's "motion and pain are improving"); Ex. 12 at 12 (reporting his current pain as a two on a ten-point scale, but a five at its worse). At Mr. McCabe's last orthopedic appointment on October 14, 2019, it was noted that he was "feeling excellent" and was "improving nicely." Ex. 19 at 4. Although six more weeks of physical therapy was recommended before transitioning to a home exercise program, Mr. McCabe was only instructed to follow-up as needed. Petitioner's last physical therapy appointment was on October 24, 2019 – at which time it was noted that Petitioner's pain intensity was stable. Ex. 12 at 4.

Another factor that is considered in awarding pain and suffering is the effect that Petitioner's shoulder injury has had on his personal and professional life. I note that in his affidavits, Petitioner describes the impact that his right shoulder injury has had on his ability to care for his wife, perform duties around his home, and to fulfill his professional obligations. I give some weight to these contentions, while comparing them to the overall medical record.

The circumstances in this case are most analogous to those in *Martin* and *Weed* – cases that were cited by Respondent and which resulted in actual pain and suffering awards of approximately $100,000.00 to $105,000.00. The *Martin* petitioner consistently characterized his pain as mild, and had an excellent recovery following surgery. However, there was an eighteen-week period where he did not seek any treatment. In *Weed*, petitioner's initial post-vaccination symptoms were severe, but like Mr. McCabe, her surgical records suggested a strong recovery with mild pain and functional limitations. Yet, the treatment duration was only around 10 months.

Under such circumstances, and considering the arguments presented by both parties, a review of the cited cases, and based on the record as a whole, I find that $110,000.00 in compensation for past pain and suffering is reasonable and appropriate in this case. Petitioner's pain and suffering slightly exceeded that of these two prior claimants.

I do not, however, find that a future pain and suffering component is appropriate. While the record does not allow the conclusion that Petitioner had fully recovered from his SIRVA after his final orthopedic appointment on October 14, 2019, no further medical records have been filed, and there is no evidence that Petitioner suffered a permanent injury, as corroborated by the views or opinions of a treater (a factor which I typically give great weight when evaluating a request for a future component). Accordingly, Petitioner's award shall be limited to past pain and suffering.

## IV.     Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $110,000.00, representing compensation for actual pain and suffering.**

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[7]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.